IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES NELSON WALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 11-107-JPG-CJP |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT and RECOMMENDATION

**PROUD, Magistrate Judge:**

This Report and Recommendation is respectfully submitted to District Judge J. Phil Gilbert pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff James Nelson Walker seeks judicial review of the final agency decision denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to **42 U.S.C. § 423**.[1]

## Procedural History

Mr. Walker's application for DIB and SSI was denied initially and on reconsideration. After a hearing, Administrative Law Judge (ALJ) Thomas C. Muldoon denied the application on August 27, 2009. (Tr. 9-16). Plaintiff's request for review was denied by the Appeals Council, and the August 27, 2009, decision became the final agency decision. (Tr. 1).

Plaintiff has exhausted his administrative remedies and has filed a timely complaint.

---

[1]The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. For all intents and purposes relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925, detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ made a reversible mistake of fact in finding that plaintiff had a hip replacement or internal fixation of his hip fracture, and, because of this mistake, he failed to build a logical bridge between the medical evidence and his RFC findings.

2. The ALJ erred in finding that he did not meet or equal Listing 1.02.

3. The ALJ's credibility findings were faulty.

4. The Appeals Council erred in its denial of review.

## The Evidentiary Record

This Court has reviewed and considered the entire record in formulating this Report and Recommendation. The following is a summary of some of the pertinent portions of the written record, focused on the issues raised by plaintiff.

### 1. Agency Forms

The initial Disability Report indicates that Mr. Walker was born in 1963, and alleges that he became disabled as of June 1, 2001. (Tr. 125).

Mr. Walker alleges that he cannot work due to injuries from a car accident on June 1, 2001. He stated that he had a hip replacement, 3 broken ribs, collar bone problems and knee problems. (Tr. 141).

After the alleged date of disability, Mr. Walker worked at a Popeye's Chicken restaurant form February, 2003, to March, 2004. On one form, he indicated that he stopped working for reasons other than his medical condition. (Tr. 131). On a different form, he stated that he stopped working because of his medical condition. (Tr. 141).

Mr. Walker submitted a Work History Report indicating that he has held a number of jobs. Most recently, he worked as a machine operator at Carr Plastics from September, 1995, through March, 1996; he worked for a temporary service doing "different jobs" from April,

1996, through March, 1999; and, from April, 1999, through June, 2001, he did "odd jobs." Following his alleged onset of disability, he worked at Popeye's Chicken for about a year beginning in February, 2003. (Tr. 152).

**2.     Prior Application**

On November 29, 2004, Mr. Walker filed a prior application for DIB and SSI. (Tr. 92-96, 97-100). He claimed the same date of disability as he alleges here, June 1, 2001. That application was denied at the reconsideration level on June 3, 2005. (Tr. 127). ALJ Muldoon noted in his decision that Mr. Walker filed a request for hearing on the prior application, but, "on March 25, 2006, a hearing dismissal was issued by Administrative Law Judge Fava." (Tr. 9). Thus, the prior denial became final.

**3.     Plaintiff's Testimony**

The evidentiary hearing took place on July 6, 2009. Plaintiff was represented at the hearing by counsel. (Tr. 19). Plaintiff was the only witness.

Plaintiff left school in the 11th grade and did not graduate from high school. (Tr. 41).

Mr. Walker's hip was injured in an automobile accident in 2001. (Tr. 31). He was hospitalized in Jackson, Tennessee, for about a week. He testified that he returned to the hospital because he was having a lot of pain, and that he believes he had a hip replacement. (Tr. 32-34).

Mr. Walker described the nature of his prior work. At Carr Plastics in Jackson, Tennessee, he operated a machine that made plastic bottles. He had to catch the bottles in a box and them put them into a bigger box. The small box weighed about 15 pounds, and the bigger box weighed about 200 pounds. He was up and down all day in that job. (Tr. 26-28). For the temporary service and while he was doing odd jobs, he did work such as lawn work, painting, carpentry and roofing. (Tr. 28-29). At Popeye's Chicken, he starting out cooking. After his hip started bothering him, he moved to seasoning chicken and then to just wiping tables and

cleaning. (Tr. 29-31). Mr. Walker was fired from that job in February, 2004. When asked why he was fired, he answered, "Well, to be honest, the manager liked me. But I didn't like her. And she fired me because I wouldn't have anything to do with her." (Tr. 41).

According to plaintiff, his hip has gotten worse since he left the job at Popeye's. He had no insurance or Medicaid. (Tr. 34). He testified that he can sit for only 15 to 20 minutes. (Tr. 35). He can lift 5 or 10 pounds. (Tr. 36). Using a cane, he can walk maybe half a block. He has difficulty with steps and has fallen "a lot." (Tr. 36).

He has trouble sleeping due to pain. He was taking only over-the-counter medication because he could not afford prescriptions. (Tr. 37-38). He recently saw a doctor at Good Samaritan, and was prescribed a sleep aid and pain medication. (Tr. 38). The pain medication is Piroxicam, which gives him a little relief. (Tr. 40).[2]

Plaintiff testified that he lives with his mother. He can cook a little. He watches television and reads the Bible. He goes to church. His niece works for a company that takes care of people. His niece does some cooking, laundry and cleaning for plaintiff and his mother. Plaintiff can dust and wash dishes. (Tr. 38-39).

**4.    Medical Records**

The medical records establish that plaintiff's understanding of the nature of his medical treatment is incorrect in that he did not have a hip replacement. In addition, he did not, as he testified, return for surgery after he was initially discharged.

At 11:35 p.m. on June 1, 2001, Mr. Walker was brought by ambulance to Jackson-Madison County General Hospital in Jackson, Tennessee. (Tr. 264). He had been driving while intoxicated, and had a head-on collision with another vehicle. (Tr. 252). X-rays taken in the

---

[2]Piroxicam is a nonsteroidal anti-inflammatory medication generally prescribed for the symptoms of osteoarthritis and rheumatoid arthritis. The brand name is Feldene. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000826, accessed on August 18, 2011.

-4-

emergency room indicated that his right hip was dislocated. There were also some bone fragments in the hip joint, but there was no fracture of the femoral neck or acetabulum (the socket of the hip joint). After the doctor tried unsuccessfully to reduce the dislocation in the emergency room, plaintiff was admitted. Dr. John Masterson then successfully performed a closed reduction under anesthesia on June 2, 2001. (Tr. 253-261).

Following the reduction, x-rays and a CT scan showed that there were fragments from a femoral head fracture in the joint. (Tr. 307-308).

On June 4, 2001, while plaintiff was still hospitalized, Dr. J. Michael Glover performed a surgical procedure to remove loose bony fragments from the right hip joint. The operative note indicates that Dr. Glover considered doing an internal fixation of the fragments. (Tr. 262). However, during the procedure, Dr. Glover determined that "All of the fragments that were removed could not be fixated; therefore, [the] decision was made to excise those as this was in a nonwieghtbearing portion of the femoral head." (Tr. 263). The operative note further indicates that an x-ray confirmed that all fragments were removed. (Tr. 263).

Plaintiff was discharged from the hospital on June 6, 2001. The discharge summary, which was prepared by Dr. Herbert Sutton, incorrectly states that Dr. Glover performed an internal fixation of the right hip. On discharge, Mr. Walker was "doing well" and was walking with a brace. He was instructed to take Vicodin 5mg every 1 to 2 hours as needed for pain, and to follow up with Dr. Glover. (Tr. 249).

The first follow-up visit with Dr. Glover was on June 14, 2001. Dr. Glover noted that his surgical wound looked good and an x-ray confirmed that his hip was reduced. The staples were removed. Plaintiff was instructed to continue using the hip brace and was given Tylenol #3. (Tr. 289).

Dr. Glover next saw plaintiff on July 12, 2001. He was "doing a lot better." Mr. Walker

"had taken only one pain pill" since he had last seen the doctor. Mr. Walker told Dr. Glover that he was "ready to get back to work." On examination, Dr. Glover noted that he still walked with a limp and that his range of motion was somewhat limited. He did not have a lot of pain, and his surgical wound was well-healed. Dr. Glover instructed Mr. Walker to discontinue the brace and to work on the range of motion of his hip. He was to begin increasing his activity, and Dr. Glover released him to resume "light duty type work." Mr. Walker was to return in 6 weeks for a final check-up. (Tr. 288).

Mr. Walker's next appointment was scheduled for August 23, 2001. He did not show up for this appointment, and never returned to Dr. Glover. (Tr. 286).

The record reflects no further treatment until May 27, 2009, when plaintiff was seen by Dr. Victor Hidalgo at Good Samaritan Health Center in Alton, Illinois. The record is brief. He complained of chronic right hip pain, and told the doctor that he had a hip replacement. He was prescribed Piroxicam, and told to return on June 15, 2009. (Tr. 312). There is no indication that he was seen at Good Samaritan again.

**5.**     **Consultative Examination and RFC Assessment**

Dr. Raymond Leung performed a consultative physical examination on March 27, 2008. (Tr. 266- 272). Dr. Leung reviewed a discharge note dated June 6, 2001, which he said indicated that an open reduction and internal fixation had been done. At the time of the exam, plaintiff was 44 years old. He gave a history of injury in an automobile accident in 2001. He said that he had a right hip replacement. He complained of pain in his neck in the front, and in his right knee. He was using a cane which had been given to him by a friend. He took over-the-counter medications, which he said helped.

Dr. Leung noted that Mr. Walker walked with a significant limp. He was able to walk 50 feet unassisted. He was not able to heel walk, but could toe walk with his cane, and was able to

squat. Although there was a slight bony prominence in the right clavicle, there was no significant tenderness. His range of motion was decreased in the cervical and lumbar spine and in the right hip. He had no muscle spasms. Pinch strength, arm strength and grip strength were 5/5 throughout. His left leg strength was 5/5, and his right leg strength was 4+/5. The circumference of the left thigh was 54 centimeters, and the circumference of the right thigh was 48 centimeters. The right calf was 1 centimeter smaller than the left calf. He had no edema in the legs and distal pulses were good on both sides. He was able to get on and off the examining table without difficulty. The range of motion of his right knee was full.

On April 7, 2008, state agency physician Lenore Gonzalez prepared a Physical Residual Functional Capacity (RFC) Assessment. (Tr. 273-280). She concluded that plaintiff could meet the exertional demands of light work, that is, occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for 6 out of 8 hours, sit for 6 out of 8 hours, with no push/pull limitations. She did assess some postural limitations due to plaintiff's limp. (Tr. 275). She also concluded that plaintiff should avoid concentrated exposure to hazards such as machinery and heights. (Tr. 277).

## **Applicable Standards**

In the Social Security context, a claimant is disabled when he has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently employed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See,** ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992);** ***Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).**

If the Commissioner finds that the claimant has an impairment which is severe and she is not capable of performing her past relevant work, the burden shifts to the Commissioner to show that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** ***Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987);** ***Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**. Thus, the issue for this Court is not whether Mr. Walker is, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. **See,** ***Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**). This Court uses the Supreme Court's definition of substantial evidence, i.e, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ***Richard v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. **Brewer v. Chater, 103 F.3d 1384, 1390 (7th Cir. 1997)**. However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, **Parker v. Astrue, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

## Analysis

ALJ Muldoon properly followed the five-step analytical framework described above. He found that Mr. Walker had severe impairments of "status post right hip fracture dislocation with open reduction and internal fixation." (Tr. 11). He found that plaintiff's condition did not meet or equal the criteria of a listed impairment, including Listing 1.02(A), major dysfunction of a weight-bearing joint, because plaintiff did not meet the regulatory definition of inability to ambulate effectively. (Tr. 12). The ALJ adopted the RFC assessment of the state agency physician, i.e., that plaintiff is able to do work at the light exertional level, with some postural limitations. In making this RFC assessment, the ALJ determined that plaintiff's testimony was not fully credible. (Tr. 13-14). The ALJ concluded that plaintiff was not disabled because he could do work at the light exertional level. (Tr. 15-16).[3]

Plaintiff's first point highlights the contradictions in the record as to the exact nature of the 2001 treatment for his right hip. Plaintiff testified, inaccurately, that he had a hip replacement. The June 6, 2001, hospital discharge summary inaccurately stated that an internal fixation was performed. In fact, as is outlined in the above review of the medical records, Dr.

---

[3]The ALJ found that the range of light, unskilled work that plaintiff could do was not significantly reduced by his occasional postural and environmental limitations. Therefore, he decided the case without using a vocational expert. This is consistent with SSR 83-14. Plaintiff does not argue that the ALJ erred in not using a VE.

Glover's operative note states that he performed a surgical procedure to remove loose bony fragments from the right hip joint. He considered doing an internal fixation of the fragments, but determined that "All of the fragments that were removed could not be fixated; therefore, [the] decision was made to excise those as this was in a nonwieghtbearing portion of the femoral head." (Tr. 262-263). The operative note further indicates that an x-ray confirmed that all fragments were removed. (Tr. 263).

Contrary to plaintiff's argument, the ALJ did not find that he had a hip replacement. It is true that the ALJ incorrectly stated that plaintiff had undergone internal fixation. However, the error was harmless. The doctrine of harmless error applies in review of administrative proceedings. *Spiva v. Astrue*, **628 F.3d 346, 353 (7th Cir. 2010)**. It matters little to the determination of disability whether plaintiff underwent an internal fixation of the fragments or whether the fragments were removed in 2001. Indeed, plaintiff's only argument as to the effect of the error is completely undermined by the fact that it is not supported by the record. Plaintiff dramatically argues that the "shattered head" of his femur was replaced into the socket, and that "there was no surgical repair." Doc. 25, p. 7. There is, however, absolutely no evidence that his femoral head was "shattered." On the contrary, Dr. Glover's operative note states that all fragments were removed, which was confirmed by x-ray. Further, the removal of the bone fragments and open reduction of the dislocation constituted surgical repair of the dislocation and fracture. Plaintiff also suggests that the ALJ was wrong to say that he had no muscle atrophy. However, he ignores the fact that the ALJ correctly noted that he had 4+/5 strength in his right leg.

In his reply brief, Doc. 30, plaintiff again argues that the ALJ's mistake of fact requires reversal. However, he does not even attempt to explain what effect the mistake has on the determination of his RFC. Whether he had an internal fixation or surgical removal of bone

fragments, or whether he had atrophy, are not determinative issues; the issue is whether, after consideration of the factors identified in the five-step analysis, he is able to perform any work within the economy. **See, 20 C.F.R. § 404.1520(b-f).** The ALJ's errors as to the exact nature of the surgery and as to atrophy were harmless. In view of the medical evidence, it would be pointless to remand for correction, as correction of these errors would not cause the Commissioner to change his ultimate decision. "If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time." *Spiva, supra*, **628 F.3d at 353**.

Plaintiff also suggests that his hip was not "repaired" because he did not have insurance or money, and that the type of treatment he received was related to his inability to pay. Doc. 25, pp. 7, 10. This is, of course, rank speculation. There is absolutely no medical evidence in the record to suggest that Dr. Glover gave Mr. Walker second-rate treatment. The ALJ (and this Court) may not "play doctor" by engaging in speculative evaluation of the quality of the medical treatment. *Rohan v. Chater*, **98 F.3d 966, 970 (7th Cir. 1996).**

Plaintiff's argument with regard to Listing 1.02A is similarly weak. He argues that the ALJ erred in finding that he does not meet the regulatory definition of inability to ambulate effectively. He argues that he meets the definition because Dr. Leung "limited" him to walking less than one block and because plaintiff testified that he can't stand/walk/sit for an 8 hour workday and that he falls. First, Dr. Leung did not place any limitations on plaintiff and did not make a medical finding that plaintiff can only walk less than one block; Dr. Leung simply noted that plaintiff *said* that he could walk less than a block. (Tr. 266). And, as will be discussed

below, the ALJ found that Mr. Walker's testimony about his limitations was not credible. On physical examination, Dr. Leung found that plaintiff was able to walk 50 feet unassisted. He was able to tandem walk, toe walk with a cane, and squat. The right thigh was 6 centimeters smaller than the left, but his right leg strength was 4+/5. (Tr. 268). Dr. Leung's report does not, as plaintiff suggests, compel the conclusion that he was unable to ambulate effectively.

The real flaw in plaintiff's argument is that he ignores the definition of inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt P, App. 1, §1.00.2.b(1) states, "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Mr. Walker uses one cane, not prescribed by a doctor, but given to him by a friend. The use of one cane does not limit the functioning of *both* upper extremities.

Plaintiff also takes issue with the ALJ's findings as to his credibility. The ALJ considered a number of factors, all of which were appropriate. He considered plaintiff's sporadic work history, lack of medical treatment from July, 2001, to May, 2009, lack of prescription pain medications, daily activities, objective medical findings, and work at Popeye's Chicken after the alleged onset of disability. He further noted that, by plaintiff's own admission, that job did not end for medical reasons. (Tr. 13-14). It was proper to consider these factors. See, 20 C.F.R. §404.1529. See also, **Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008)**, holding that it is proper to consider part-time work after the alleged onset of disability.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness, and they should be overturned only if they were

"patently wrong." ***Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).** That is not the case here. Plaintiff suggests that his lack of treatment was due to the fact that he had no insurance coverage. However, he failed to show up for his last appointment with Dr. Glover, who was treating him despite his lack of insurance. The record does not reflect that he made any attempt to get treatment until he went to Good Samaritan, where, of course, he was successful. Further, there is no indication in the record that he kept his follow-up appointment at Good Samaritan. In any event, even though his lack of treatment may be explained, at least in part, by his lack of insurance, the ALJ's credibility assessment "will stand 'as long as [there is] some support in the record....'" ***Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008)(internal citation omitted)**.

Lastly, plaintiff argues that the Appeals Council erred in denying review. That decision is not subject to judicial review. Federal courts have jurisdiction to review the "final decision of the Commissioner of Social Security made after a hearing..." 42 U.S.C. §405(g). Where the Appeals Council has denied review, the "final decision" subject to judicial review is the decision of the ALJ. ***Sims v. Apfel*, 530 U.S. 103, 106-107 (2000)**. See also, ***Califano v. Sanders*, 430 U.S. 99 (1977)**.

### Recommendation

After careful consideration, this Court is convinced that the decision of the ALJ is supported by substantial evidence in the record as a whole, and that no errors of law were made. Therefore, this Court recommends that the final decision of the Commissioner of Social Security, finding that plaintiff James Nelson Walker is not disabled, be **AFFIRMED**.

Objections to this Report and Recommendation must be filed on or before **September 6, 2011.**

**Submitted: August 19, 2011.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**